UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IRENE RICHARDSON, on behalf of herself and those similarly situated, Plaintiff | * * * * | |
| versus | * * | CLASS ACTION COMPLAINT and DEMAND FOR |
| MERCK & CO, INC., SCHERING-PLOUGH CORPORATION, and MERCK/SCHERING-PLOUGH PHARMACEUTICALS, LUPIN PHARMACEUTICALS, INC., TEVA PHARMACEUTICALS, INC., DR. REDDY'S LABORATORIES, INC., RANBAXY LABORATORIES, INC. Defendants | * * * * * * * * * | JURY TRIAL |

**************************************

**PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT**

**PARTIES**

1.     Plaintiff, Irene Richardson (hereinafter "Plaintiff") is an individual and citizen and

resident of Covington, St. Tammany Parish, Louisiana.

2.     At all times relevant herein, Defendant, Merck & Company, Inc (hereinafter "Merck" or

"Defendant") is a corporation organized and existing under the laws of the State of New

Jersey, and maintains a principal place of business in New Jersey. Merck maintains its

headquarters at One Merck Drive, Whitehouse Station, NJ 08889.

3.     Upon information and belief, at all times relevant herein, Defendant, Lupin

1

Pharmaceuticals, Inc. (hereinafter "Lupin") is a corporation organized and existing under the laws of the State of Delaware, and maintains a principal place of business at Harborplace Tower, 111 S. Calvert Street, Baltimore, Maryland 21202.

4.      Upon information and belief, at all times relevant herein, Defendant, Teva Pharmaceuticals, Inc. (hereinafter "Teva") is a corporation organized and existing under the laws of the State of Delaware, and maintains a principal place of business at 1090 Horsham Road, North Wales, Pennsylvania 19454.

5.      Upon information and belief, at all times relevant herein, Defendant, Dr. Reddy's Laboratories, Inc. (hereinafter "Reddy") is a corporation organized and existing under the laws of the State of New Jersey, and maintains a principal place of business at 200 Somerset Corp. Blvd., Bridgewater, New Jersey 08807.

6.      Upon information and belief, at all times relevant herein, Defendant, Ranbaxy Laboratories, Inc. (hereinafter "Ranbaxy") is a corporation organized and existing under the laws of the State of Delaware, and maintains a principal place of business at 600 College Road East, Suite 2100, Princeton, New Jersey 08540.

7.      At all material times herein, Defendants were, and are, in the business of profiting from the design, manufacture, marketing, distribution and/or sale of the brand-name prescription drug Zocor, or its generic version, simvastatin.

8.      At times relevant and material hereto, Defendants have sold, distributed and marketed

2

either directly or indirectly through third-parties or related entities, the pharmaceutical

drugs Zocor or simvastatin in the State of Louisiana.

## JURISDICTIONAL STATEMENT

9.      This Court has jurisdiction pursuant to 42 U.S.C. sec. 1332. Plaintiff hereby avers that the

amount in controversy in the above captioned matter exceeds the jurisdictional limits and

that said controversy arises between citizens of different states as is required by the

aforementioned state in order to invoke the "Diversity of Citizenship" Jurisdiction of this

Court.

10.     Venue is proper as Plaintiff is a Louisiana resident, her claims and causes of action arose

in this judicial district, and a substantial part of the events giving rise to the Plaintiff's

claims occurred in this judicial district.

11.     At all times relevant and material hereto, Defendants have conducted continuous and

substantial business in the State of Louisiana.

12.     At all times relevant and material hereto, the Defendants acted and gained knowledge

themselves and by and through their various agents, servants, employees, and/or

ostensible agents.

13.     As more particularly pleaded below, Plaintiff maintains that the pharmaceutical drug,

Zocor, is defective, dangerous to human health, unfit and unsuitable to be marked and

sold in commerce, and lacked proper warnings as to the dangers associated with its use.

3

14. At all relevant times, defendant Merck was in the business of developing, researching, selling, distributing, designing, manufacturing, testing, evaluating, licensing, labeling and/or marketing, either directly or indirectly through third parties or related entities, pharmaceutical drugs including Zocor.

15. At all relevant times, Defendant Merck did in fact develop, research, sell, distribute, design, manufacture, test, evaluate, license, label, and/or market, either directly or indirectly through third parties or related entities, pharmaceutical drugs including Zocor.

16. Merck obtained FDA approval on Zocor 80 mg in approximately 1998 and began its distribution and sale through the United States thereafter. Zocor is the brand name used by Merck to market and distribute simvastatin.

17. Defendant Merck concealed the serious risks associated with Zocor, Merck's highest selling drug, prior to losing the patent protection and therefore was viewed as critical for Merck's profitability. Safety concerns over Zocor developed such as myopathy, including a rare form called rhabdomyolysis, which dramatically impacted Merck's sales.

18. Merck knowingly chose to market this product, despite it's knowledge at product launch and its post-marketing data thereafter that use of Zocor carries significant risk factors. These adverse effects were revealed in a press release from the Food and Drug Administration (hereinafter "FDA") on March 19, 2010. The FDA press release was based upon information derived from clinical trials, observational studies, adverse event

4

reports, and prescription use data. The FDA also used data from the SEARCH (Study of

the Effectiveness of Additional Reductions in Cholesterol and Homocysteine).

19.   From 2010 until approximately July 2011 the Plaintiff was prescribed, and took as

directed, Defendants' drug Zocor or simvastatin for cholesterol.

20.   As a direct and proximate result of the liability-producing conduct of Defendants and the

defective and unreasonably dangerous condition of their product Zocor or simvastatin, the

Plaintiff fears she may suffer from muscle injury or rhabdomyolisis.

21.   As a direct and proximate result of the liability-producing conduct of Defendants and the

defective and unreasonably dangerous condition of their products Zocor or simvastatin,

Plaintiff may experience physical injuries, pain and suffering, loss of enjoyment of life,

lost wages, lost earning capacity, medical expenses, medical monitoring expenses,

embarrassment and humiliation, fright and apprehension, emotional distress and other

damages all of which are believed to be permanent.

22.   Zocor is the brand name of simvastatin, a cholesterol lowering medication.

23.   On March 19, 2010 the FDA issued a press release warning patients and healthcare

providers of a greater risk of developing muscle injury, including rhabdomyolysis, for

patients as they are prescribed higher doses (specifically 80 mg).

24.   The SEARCH trial results revealed that more patients in the simvastatin 80 mg group

developed myopathy compared to patients in the simvastatin 20 mg group. The

preliminary data showed that 11% of patients taking 80 mg developed rhabdomyolysis as compared to no patients in the 20 mg group.

25.    In June 2011, the FDA approved a label change for simvastatin based upon the aforementioned results.

26.    As previously noted, Merck had a significant market share based upon claims of Zocor's efficacy, a very aggressive marketing program which included financial incentives to sales teams, infusion of numerous sales representatives and massive direct-to-consumer advertising and physician sampling program.

27.    As a result of such marketing, Zocor gained a significant market share in competition with other cholesterol lowering medications, that Merck would not have gained if Merck had not suppressed information about Zocor and/or made false representations of Zocor's superiority and efficacy.

28.    If Merck had not engaged in this conduct, prescribers such as Plaintiff's prescriber would not have prescribed Zocor in patients, such as the Plaintiff, and would have switched from Zocor to safer products, or would have refrained wholly from any use of Zocor.

29.    From approximately 1998 through the present, Merck continued to engage in a common scheme in marketing, distributing and/or selling Zocor under the vise that it was safe and efficacious for persons such as Plaintiff.

30.    Plaintiff alleges that the suppression of this information constituted a common scheme by

Merck to conceal material information from Plaintiff.

31.     The actions of Defendants in failing to warn of the clear and present danger posed to others by the use of their drugs Zocor or simvastatin in suppressing evidence relating to this danger, and in making deliberate and misleading misrepresentations of fact to minimize the danger or to mislead prescribers and patients as to the true risk, constitutes such clear, blatant and outrageous conduct as to warrant the imposition of exemplary damages against Defendants.

## FIRST CAUSE OF ACTION

32.     Defendants are liable unto Plaintiff under the Louisiana Products Liability Act, R.S. 9:2800.51, *et seq.,* as Plaintiff's damages were proximately caused by the acts and/or omissions of defendants in the following particulars:

  1.     Providing a product that was unreasonably dangerous in construction or composition;

  2.     Providing a product that was unreasonably dangerous in design;

  3.     Providing a product that was unreasonably dangerous because of inadequate warning about the product;

  4.     Providing a product that was unreasonably dangerous because of nonconformity to express warranties.

29.     Defendants knew, or should have known, that at the time their products left their control, the design, nature and danger of the products' characteristics could cause Plaintiff's

7

damage. Furthermore, defendants knew or should have known of the design, nature, and danger of the products' characteristics, but failed to inform the public and foreseeable users.

## SECOND CAUSE OF ACTION

30. Defendants are by operation of law presumed to know that their products contained redhibitory defects which they failed to declare, so that defendants are further liable unto Plaintiffs under Articles 2520 *et seq*. of the Louisiana Civil Code. Such liability includes return of the purchase price, damages, including, but not limited to, mental anguish, and attorney's fees pursuant to Article 2545 of the Louisiana Civil Code and the presumption contained therein.

31. Separate and apart from, and in the alternative to, their status as manufacturers of their products, defendants entered into a contract of sales with Plaintiff as a result of Plaintiff's purchase of their products.

## THIRD CAUSE OF ACTION

32. As a result of their breach of conventional obligations, defendants are obligors in bad faith per Articles 1994 and 1997 of the Louisiana Civil Code and liable unto Plaintiffs for all damages, foreseeable or not, that are a direct consequence of defendants' failure to perform, including, but not limited to, damages for pecuniary and non-pecuniary loss.

## FOURTH CAUSE OF ACTION

8

33.    Defendants, in the alternative, are liable unto Plaintiff under Article 2298 of the Louisiana

Civil Code in that defendants were unjustly enriched without cause at the expense of the

Plaintiff.

### FIFTH CAUSE OF ACTION

34.    Defendants have engaged in unfair or deceptive acts in violation of the Louisiana Unfair

Trade Practices Act, LSA-R..S. 51:1401 *et seq*., warranting the imposition of damages

and attorneys' fees.

### SIXTH CAUSE OF ACTION

35.    To the extent that the evidence establishes that defendants have engaged in intentional

misrepresentations, delictual fraud or have violated Art. 1953of the Louisiana Civil Code,

Defendants are liable unto Plaintiff for the imposition of damages and attorneys' fees.

### SEVENTH CAUSE OF ACTION

36.    Alternatively, defendants are liable unto Plaintiff under a theory of negligent

misrepresentation. Specifically, defendants, because of their research and testing,

assumed a duty to insure that the information they provided to physicians and hospitals

about their products was accurate, correct and complete. However, because of lack of

reasonable care or lack of skill or competence, defendants misrepresented that

information causing physical injury and economic loss to Plaintiffs, who were intended

users of the products who relied upon the representations, to their detriment. Defendants

owed a duty to Plaintiff because of defendants' knowledge that the ultimate purpose of their misrepresentations was to facilitate the sale of their products to users like Plaintiffs. Defendants knew that Plaintiff would receive those misrepresentations through physicians and hospitals who would channel defendants' products to users like Plaintiff.

## EIGHT CAUSE OF ACTION

37.    Defendants are liable unto Plaintiff for negligent infliction of emotional distress.

38.    As the proximate result of the aforementioned acts and/or omissions of defendants, Plaintiff has sustained, or are certain to sustain, the following damages:

　　　1.    Past and future loss of earnings;

　　　2.    Past and future medical expenses;

　　　3.    Nursing and rehabilitative care expenses;

　　　4.    Loss of earning capacity;

　　　5.    Past and future pain and suffering;

　　　6.    Past and future mental anguish;

　　　7.    Fear of future injury;

　　　8.    Permanent disability;

　　　9.    Loss of enjoyment of life.

39.    Plaintiff pleads the doctrine of *res ipsa loquitur.*

40.    Defendants acted together in concert in their actions, such that each is jointly liable for

the acts of the other. Defendants shared many of the same officers and directors and made

decisions in a uniform voice. Defendants and their subsidiaries had a complete unity of

interest and control. Their objectives were common, not disparate, and their general

corporate actions were guided or determined not by separate corporate consciousness, but

by one.

41.     Defendants are liable as solidary obligors under Article 1800 and 2324(A) of the

Louisiana Civil Code.

42.     The Complaint is filed within one (1) year of when Plaintiff first learned of a defect in

defendants' products and the causal link between her injury and a defect in defendants'

products. Plaintiff asserts the doctrine of *contra non valentem.*

43.     Plaintiff requests and is entitled to trial by jury on all issues against all defendants.

## CLASS ACTION

44.     This action is appropriate for determination through the Class Action Procedure for the

following reasons:

A.     The large number of potential claimants present a level of numerosity better

handled through the class action procedure as opposed to a mass joinder of

individual claims;

B.     The common issues of law and fact pertaining to the determination of fault and

the liability for compensatory and exemplary damages predominate over the

individual issues of quantum, and such issues are typical of similar claims;

C.    The determination of fault and the basis for assessment of compensatory and exemplary damages may be made in the class action without the necessity of proof at that time as to the amount of those damages, thereby establishing guidelines for settlement and/or subsequent trials in individual cases if necessary;

D.    Petitioners herein have sustained damages of the nature described hereinabove and are suitable representatives of the class;

E.    The Plaintiffs herein are represented by skilled attorneys who are experienced in handling mass torts and class actions, and who can be expected to handle this matter in an expeditious and economical matter to the best interests of the class membership;

F.    The class action procedure is the superior vehicle for the efficient disposition of the issues and claims herein presented.

**WHEREFORE,** Plaintiff prays:

1.    That Defendant be required to answer this class action complaint after all legal delays have run, all in accordance with law.

2.    That after due proceedings had, that this action be certified as a class action, as alleged above, for the purpose of determining the common issues of liability for appropriate damages.

12

3.      That upon certification of the class action, the Court call for the formulation of a suitable management plan.

4.      That after due proceedings had, and a trial by jury, there be judgment herein in favor of Plaintiff and against defendant, for all damages which are reasonable in the premises, together with legal interest thereon from the date of judicial demand until paid, and for all costs of these proceedings.

5.      That the rights of the Plaintiff and the members of the class to establish their entitlement to compensatory damages, and the amounts thereof, be reserved for determination in their individual actions when appropriate.

6.      That Plaintiff recovers her costs for the prosecution of this class action.

7.      That a medical monitoring class be certified, and the Court aware appropriate damages sufficient to establish a medical monitoring program as deemed effective by Plaintiff's medical experts.

8.      That the Court render judgment in favor of Plaintiff's class awarding all damages as prayed for herein, including attorneys' fees, with all costs assessed against Defendants.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues.


Respectfully submitted:

Michael Hingle & Associates, LLC

Date: June 1, 2012

/s/ Michael Hingle
Michael Hingle, #6943
Ronald J. Favre, #5979
Bryan A. Pfleeger, #23896
220 Gause Boulevard
Slidell, Louisiana 70458
Telephone: (985) 641-6800
Fax: (985) 646-1471

14